**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Francis JENNY, Defendant–**
**Appellant.**

No. 93–1007.

United States Court of Appeals,
Tenth Circuit.

Oct. 15, 1993.

---

Warren R. Williamson, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, CO, for defendant-appellant.

Kyra Jenner, Asst. U.S. Atty. (James R. Allison, Interim U.S. Atty., with her on the brief), Denver, CO, for plaintiff-appellee.

Before McKAY, Chief Judge, and ENGEL * and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Robert Francis Jenny was convicted of two counts of intimidating a flight crew member, 49 U.S.C.App. § 1472(j), and one count of abusive sexual contact, 18 U.S.C. § 2244(b), 49 U.S.C.App. § 1472(k)(1). He appeals his sentence, alleging that the district court erroneously enhanced his sentence for recklessly endangering the safety of the aircraft and passengers under United States Sentencing Guideline § 2A5.2(a)(2). We have jurisdiction under 18 U.S.C. § 3742, and we affirm.

On July 29, 1992, Defendant boarded United Airlines Flight 475, which was enroute from Denver, Colorado to Ontario, California and carrying 117 passengers in a 120–passenger plane. Defendant was traveling to California to serve a sentence for a drunk driving offense. He was the last passenger to board the plane and boarded immediately before departure. Upon boarding, Defendant paused briefly at the cockpit and spoke to Senior Flight Attendant Anne Havely about the safety of the plane. Miss Havely assured him the plane was safe, allowed him to speak to the pilots regarding its safety, and directed him to his seat.

Upon reaching his seat, Defendant expressed dissatisfaction with his seat assignment and demanded an aisle seat. In doing so, Defendant cursed and yelled at Miss Havely. Miss Havely accommodated Defendant, moving him to another seat.

After lift-off, Defendant asked the passenger sitting next to him, Lorinda Habighorst, if he could get out of his seat. Mrs. Habighorst, a young pregnant woman traveling alone, replied that he could not leave his seat until the seat belt sign was turned off. Defendant did not listen to Mrs. Habighorst's advice; instead, he left his seat to walk to the front of the plane. Miss Havely escorted Defendant back to his seat for his own safety, helped him fasten his seat belt, and offered him coffee, to which Defendant responded affirmatively, using an expletive. Miss Havely gave the appellant coffee, which he spilled on himself and Miss Havely, and then Defendant cursed Miss Havely for spilling the coffee, making derogatory references to Miss Havely personally and using a variety of vulgar expletives. Miss Havely testified that she felt intimidated by Defendant because of his size and abusive language, and she was concerned for her safety and for the safety of everyone on the airplane.

Defendant then groped Miss Havely's right breast, and when she told him to keep his hands to himself, Defendant laughed. Miss Havely reported Defendant's actions to the plane's pilot, Captain Wayne Wetzel.

Mrs. Habighorst, frightened by Defendant, edged as far away from him as possible. Defendant made physical contact with her by touching her arm and inquiring why such a pretty lady was traveling alone without a man to watch over things.' Defendant then began to drink from a bottle of liquor he had brought with him onto the plane and instructed Mrs. Habighorst not to tell anyone he was drinking. Mrs. Habighorst asked Defendant not to touch her. Defendant turned away and cursed to himself, and then grabbed and shook Mrs. Habighorst's arm again. Mrs. Habighorst rang the service bell for the flight attendant and broke into tears when she asked to be relocated to another seat. As Mrs. Habighorst moved to another seat, Defendant grabbed her carry-on bag.

After Mrs. Habighorst was relocated, Defendant began harassing other passengers. He reached across the aisle and grabbed the arm of the woman sitting there, who was

* The Honorable Albert J. Engel, United States Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

traveling with her thirteen year old daughter. The woman was visibly shaken from the contact, and Mr. Michael Cook, a passenger seated in the window seat of her row, exchanged seats with her to protect her and her daughter from further advances.

Miss Havely then made a second trip to the cockpit to tell Captain Wetzel that Defendant was continuing his abusive conduct. She told Captain Wetzel that she was neglecting her other duties because of Defendant's conduct and informed him of Mrs. Habighorst's emotional state. Captain Wetzel left the cockpit to talk to Defendant and was startled to find him in the first class galley, located just outside the cockpit. Captain Wetzel, feeling intimidated and threatened by Defendant's size and proximity to the cockpit, worried about a possible scuffle and the potential for Defendant to have access to the cockpit if a scuffle occurred. He was also concerned that Defendant could cause the emergency passenger slide to inflate inside the plane, injuring passengers.

Captain Wetzel told Defendant that his conduct would not be tolerated and instructed him to return to his seat. The captain then returned to the cockpit and instructed Miss Havely to return to the main cabin. When Miss Havely left the cockpit, she found Defendant perched on her jump seat an arm's length from the cockpit door. She asked him to return to his seat, and Defendant began shouting that he was going to marry her. Defendant's shouting was loud enough to distract the pilots, and the captain immediately called Miss Havely over the interphone to ask if Defendant was threatening her. Miss Havely replied that he was, and the captain told Miss Havely that he intended to make an unscheduled landing in Grand Junction, Colorado.

Defendant returned to the rear of the plane and sat in the middle seat of the same row in which he had previously been sitting and in which he was now the only passenger. Miss Havely sat on the arm rest on the aisle of Defendant's row to protect other passengers from Defendant. Defendant began pawing and grabbing at Miss Havely's hips and buttocks and began disrobing and making sexually explicit and vulgar remarks.

Defendant then removed his shirt, twirled it into a long piece of cloth, and hurled it toward the woman sitting in front of him, trying to choke her with it. Miss Havely took his shirt away from him, and as the plane landed, Defendant passed out. Defendant was arrested and taken into custody immediately after the plane landed in Grand Junction.

At trial, Dr. William Hansen, a psychologist called by and for Defendant, testified that Defendant had a simple phobia about flying and airplanes. Defendant's fiancee confirmed his fear of flying, testifying that she had witnessed it on prior occasions. Defendant testified that he did not have a clear recollection of what happened on Flight 475. At sentencing, court-appointed psychiatrist, Dr. David Muller, giving his opinion by letter to the court, stated that Defendant suffered from severe alcohol dependence and airplane phobia. Dr. Muller also concluded that Defendant's actions were not premeditated but were the product of alcohol excess, airplane phobia, his dread of leaving his girlfriend, and the prospect of incarceration in California. Dr. Muller noted, "[i]t seems clear that [Defendant] was having an alcoholic 'blackout' at the time of these offenses."

A jury convicted Defendant of two counts of intimidating a flight crew member, 49 U.S.C.App. § 1472, and one count of abusive sexual contact, 18 U.S.C. § 2244(b), 49 U.S.C.App. § 1472(k)(1). Determining that Defendant's actions were reckless, the district court assigned Defendant a base offense level of eighteen. U.S.S.G. § 2A5.2(a)(2) (reckless endangerment of the safety of an aircraft). The district court's determination of recklessness was based on Defendant's previous "violent or abusive" behavior on at least three occasions when arrested for alcohol-related offenses and during one episode—within three months prior to the airplane incident—when he was evicted from an Amtrak train for harassing a female passenger. The district court concluded that it should have come as no surprise to Defendant "that drinking a large quantity of alcohol would cause him to become intoxicated and that disruptive and assaultive behavior was likely to emerge when he was in such a

condition." Defendant's base offense level of eighteen was increased by one for the combined offenses, U.S.S.G. §§ 3D1.2, 3D1.4, and decreased by two for acceptance of responsibility, U.S.S.G. § 3E1.1(a). With a total offense level of seventeen and a criminal history category of VI, Defendant's guideline range was 51 to 63 months imprisonment. Defendant was sentenced to 51 months imprisonment for each intimidation of flight crew count and six months imprisonment for the abusive sexual contact count, to be served concurrently.

Defendant argues that the district court erroneously determined that he had acted recklessly, and thus, U.S.S.G. § 2A5.2(a)(2)[1] was not applicable. The district court applied the definition of reckless found in U.S.S.G. § 2A1.4, Application Note 1, which states:

> "Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in that situation.

The district court explained that it applied this application note 1 definition by authority of U.S.S.G. § 1B1.1, Application Note 2, which states:

> Definitions of terms also may appear in other sections. Such definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis.

At first blush, a reading of Defendant's brief leads one to think that he is arguing that the district court misapplied the guideline in its definition of recklessness, but a closer examination reveals that Defendant challenges only the district court's factual determination that he possessed the awareness or "foreknowledge" required for recklessness.[2] Therefore, we do not address whether the district court applied the appropriate definition of reckless, and review only the district court's finding of awareness or "foreknowledge" for clear error. *United States v. Powell,* 982 F.2d 1422, 1435 (10th Cir.1992) (district court's findings of fact accepted unless clearly erroneous, and due deference is given to court's application of the guidelines to the facts), *cert. denied,* —— U.S. ——, 113 S.Ct. 1356, 122 L.Ed.2d 736 (1993).

Defendant's argument to this court—that he did not have the awareness or foreknowledge required—is two-tiered. We address each argument separately.

First, Defendant argues that even though he had been evicted from an Amtrak train within the last few months for harassing a female passenger while intoxicated and even though he had been arrested on other occasions for violent or abusive behavior while intoxicated, he could not have foreseen that he might have become violent and abusive on an airplane because he had flown "after or while drinking, at least twice in the months before [this incident], and had not been the least bit disruptive." (Appellant's Brief, p. 10). To support this argument, Defendant relies on his diagnosis of flying phobia, which he alleges combined with his intoxication to create his unforeseeable behavior. We fail to see how Defendant's flying phobia and his prior air travel without incident make his abusive and violent behavior unforeseeable. A reasonable person, who is aware that alcohol can make him violent and abusive and who is also aware that he possesses a fear of

---

**1.** U.S.S.G. § 2A5.2 provides different base offense levels for offenses involving interference with a flight crew member. The guideline provides as follows:

> *Interference with Flight Crew Member or Flight Attendant*
> (a) Base Offense Level (Apply the greatest):
>    (1) 30, if the defendant intentionally endangered the safety of the aircraft and passengers; or
>    (2) 18, if the defendant recklessly endangered the safety of the aircraft and passengers; or

(3) if an assault occurred, the offense level from the most analogous assault guideline, §§ 2A2.1–2A2.4; or
   (4) 9.

**2.** At oral argument, Defendant's counsel conceded that his argument to this court is limited to challenging the district court's factual determination of recklessness and that he is in no way challenging the district court's application of the reckless definition located at U.S.S.G. § 2A1.4, Application Note 1.

flying which makes him nervous and edgy, must be aware that the combination of intoxication and air travel could lead to dangerous consequences.

In his second argument to this court, Defendant attempts to equate foreknowledge with premeditation. He argues that because the uncontested testimony of the expert was that Defendant's actions were not premeditated, he could not have possessed the foreknowledge for a finding of recklessness. Because the foreknowledge required for a finding of recklessness is unrelated to premeditation, we reject this argument.

Black's Law Dictionary defines premeditation as follows:

> The act of meditating in advance; deliberation upon a contemplated act; plotting or contriving; a design formed to do something before it is done. Decision or plan to commit a crime, such as murder before committing it. A prior determination to do an act, but such determination need not exist for any particular period before it is carried into effect.

*Black's Law Dictionary* 1062 (5th ed. 1979). Thus, premeditation requires a plan to intentionally perform an act, whereas the foreseeability required for a finding of recklessness, under Defendant's own definition, is merely a foreknowledge or awareness of possible consequences of certain behavior. (Appellant's Brief, p. 9). Therefore, the psychiatrist's testimony that Defendant had not acted in a premeditated fashion does not mean that Defendant did not act in a reckless manner.

Without specifically planning, *i.e.*, premeditating, the violent and abusive behavior, Defendant could have foreseen that his intoxication might result in violent and abusive behavior. Furthermore, even if premeditation had some bearing on a determination of recklessness, the court as the fact finder during sentencing was free to reject or place less emphasis on the psychiatric testimony in favor of inferences drawn from evidence of Defendant's violent and abusive behavior while intoxicated on previous occasions. *See United States v. Hager*, 969 F.2d 883, 888 (10th Cir.) (credibility of a witness and weight of witness's testimony are for trier of fact alone), *cert. denied*, — U.S. —, 113

S.Ct. 437, 121 L.Ed.2d 357 (1992); *see also United States v. McIntyre*, 997 F.2d 687, 709 (10th Cir.1993) (district court is trier of fact at sentencing).

Upon reviewing the record and verifying Defendant's prior violent and abusive behavior when intoxicated and Defendant's awareness of his flying phobia, we hold that the district court did not err in finding that Defendant acted with an awareness to foreseeable consequences. As a result, we affirm the court's application of U.S.S.G. § 2A5.2(a)(2) for recklessly endangering the safety of an aircraft.

AFFIRMED.