# UNITED STATES COURT OF APPEALS

**Filed 1/4/96**

## FOR THE TENTH CIRCUIT

————————————

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 95-1194 |
| | ) | (D.C. No. 94-CR-187-S) |
| GLEN ALLEN VICKARYOUS, | ) | (D. Colo.) |
| | ) | |
| Defendant-Appellant. | ) | |

————————————

## ORDER AND JUDGMENT[*]
————————————

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

————————————

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Glen Allen Vickaryous pleaded guilty to one count of interfering with a member of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R.36.3.

a flight crew in violation of 49 U.S.C. § 1472(j). During a commercial flight from Minneapolis to San Diego, Mr. Vickaryous struck the pilot of the aircraft, Captain Donald L. Wolf, in the jaw, causing him to have severe difficulties performing his duties. As a result of these difficulties, Captain Wolf had to make an emergency landing in Denver. Mr. Vickaryous now contends the district court erred in finding his "offense involved recklessly endangering the safety of the aircraft and passengers" within the meaning of U.S.S.G. §2A5.2(a)(2). We affirm.

Mr. Vickaryous relies on our decision in *United States v. Jenny*, 7 F.3d 953 (10th Cir. 1993), for the proposition the district court could not find he acted recklessly without evidence he had actual, subjective "foreknowledge" "before boarding the plane in a state of intoxication .., based on his own personal history, that such action would lead to the type of conduct which in fact occurred." We consider Mr. Vickaryous' contention specious.[1]

Even if we assume *arguendo* our holding in *Jenny* requires a finding Mr. Vickaryous had actual, subjective "foreknowledge" his actions on U.S. Air flight 8620 would "endanger[] the safety of the aircraft and passengers," there is ample evidence to support such a finding.

---

[1] This is not the first specious argument made in this case. Prior to sentencing, Mr. Vickaryous moved for a downward departure to allow in-home detention in part because Captain Wolf "contributed significantly to provoking the offense behavior" by letting him on the airplane in the first place. U.S.S.G. §5K2.10.

2

There were over 125 other passengers on U.S. Air flight 8620. Shortly before takeoff, Julie Unger, one of the flight attendants, told Captain Wolf Mr. Vickaryous had been "consuming some alcohol" and she "wasn't sure of his status." Captain Wolf left the flight deck and told Mr. Vickaryous he would not allow him to have any alcohol during the flight. Captain Wolf later testified he "was concerned of [Mr. Vickaryous'] conduct, I expected him to conduct himself in an appropriate manner while on this aircraft. And he assured me under both cases--we carried on a little conversation--that he would be fine, that he would not be a problem, and that everything would be fine."

Approximately forty-five minutes after takeoff, Ms. Unger told Captain Wolf that Mr. Vickaryous had grabbed her buttocks twice and was behaving disruptively. Captain Wolf left the cockpit and told Mr. Vickaryous he was not to touch members of the flight crew, that disruptive behavior would not be tolerated, that his behavior violated federal air regulations, and, if necessary, he would return to Minneapolis and have him taken off the airplane. A few minutes after Captain Wolf returned to the cockpit, another flight attendant, Kenneth Mowad, saw Mr. Vickaryous touch Ms. Unger's buttocks a third time. Mr. Mowad told Mr. Vickaryous such behavior would not be tolerated. Mr. Vickaryous said "fuck you."

Ms. Unger and Mr. Mowad told Captain Wolf about this latest incident, and also told

3

him they believed Mr. Vickaryous had brought alcohol on board the airplane. Captain Wolf later testified Ms. Unger told him "You've got to do something. This guy is very belligerent. He's being very obnoxious. And you've got to get that alcohol away from him." The fifteen-year-old girl who was sitting next to Mr. Vickaryous during the flight later stated he offered her some alcohol and called her a "punk" and a "pussy" for not accepting, that Mr. Vickaryous spilled alcohol all over her while trying to pour some into her cup, that he tried to put his headphones on her head, that he touched her arm several times, and that he took her hand and kissed it three times. She also stated two children seated nearby, a girl of four or five and a boy of eight or nine, told her Mr. Vickaryous had shown them a knife. The children cried throughout the flight.

When Captain Wolf came to talk to Mr. Vickaryous for a third time, he punched Captain Wolf in the jaw. Captain Wolf later testified "my ears hurt, my head hurt [a]nd I knew I'd ... been struck pretty good." Captain Wolf "stood there for a little bit just trying to gather [himself] up," and then returned to the cockpit. Captain Wolf then "knew that [his] thought process was compromised" because he "had a considerable amount of difficulty trying to accomplish" "the more simple and routine tasks that [he was] asked to do." Captain Wolf asked his first officer to take over the controls while he manned the radio, but when air traffic control called, he did not respond, and did not realize they had called until his first officer told him. During landing, Captain Wolf had to ask his first officer to help

him with some routine mathematical calculations that "to an airline captain [are] as easy as ... breathing." Captain Wolf also testified the situation Mr. Vickaryous caused was a "real safety compromise," because the flight crew was worked up and might be distracted from responding quickly to ensure the passengers' safety if they had trouble landing, and because he himself "was not normal" and "was not in a position ... to think clearly in the event that we had an abnormal [situation] that we had to deal with or an emergency situation on top of what we already had." Captain Wolf also emphasized it was very important for his crew to function as a team and, because of the assault, he could not adequately perform his role in that team. In short, never in his "entire flying career" had Captain Wolf felt so "compromised ... in just being able to make good, safe, sound decisions."

Captain Wolf told his first officer to land the plane at Stapleton Airport in Denver. Because the airplane was carrying enough fuel for a trip to San Diego, but had used only a portion of that fuel in reaching Denver, it exceeded its certified structural landing weight limit. Although Captain Wolf had trained other pilots how to use the tables consulted when landing an overweight airplane, he had difficulty finding the appropriate table. While Captain Wolf told the passengers over the PA system they were going to land in Denver, he could hear Mr. Vickaryous shouting obscenities.

After landing in Denver, all the passengers, except for Mr. Vickaryous, left the

5

airplane. Denver police officers entered the airplane and asked Mr. Vickaryous to leave. Mr. Vickaryous refused, and Captain Wolf asked the officers to forcibly remove him. When the officers approached Mr. Vickaryous, he reached into a fanny pack and pulled out a knife. The officers tried to move Mr. Vickaryous, but he resisted. They then placed him in a carotid choke hold, rendered him unconscious for ten to fifteen seconds, and took him off the airplane.

Even if we disregard Mr. Vickaryous's other disruptive behavior, including his abuse of the flight attendants and disregard for his fellow passengers, it is simply impossible to conclude he did not have actual, subjective "foreknowledge" his decision to strike Captain Wolf in the jaw would "recklessly endanger[]" the passengers and crew of U.S. Air flight 8620. Thus, assuming such a finding is required under *Jenny*, there is ample evidence to support it.

**AFFIRMED**.

Entered for the Court:

_____
**WADE BRORBY**
United States Circuit Judge