In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1735

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL C. O'BRIEN,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 CR 179--Lynn Adelman, Judge.

Argued October 26, 2000--Decided January 23, 2001

Before Bauer, Posner, and Ripple, Circuit Judges.

Bauer, Circuit Judge. Michael O'Brien appeals
his sentence of 41 months incarceration for
involuntary manslaughter under 18 U.S.C. sec.sec.
1112, 1152, 1153 and Wis. Stat. sec. 343.44(1),
arguing that the district court erred by finding
his conduct "reckless" under U.S.S.G. sec. 2A1.4
and by calculating his sentence accordingly. We
affirm.

BACKGROUND

O'Brien was involved in a traffic accident
which claimed two lives. The accident occurred on
a hilly, two-laned portion of Wisconsin State
Highway 55 on the Menominee Indian Reservation.
George Howlett, a witness to the accident,
reported to a Menominee Tribal Police sheriff at
the scene that he had been driving up a hill at
approximately fifty miles per hour on Highway 55
when the van driven by O'Brien began to pass him
in the oncoming traffic lane. When Howlett
reached the crest of the hill, he saw O'Brien's
van and another car spinning after impact.
Immediately before the collision, O'Brien's van
was in the lane for oncoming traffic heading
straight for the other car, which was traveling
in the opposite direction in the same lane. In an
attempt to avoid the accident, both vehicles
swerved toward a ditch on the near side of the
road where they collided head-on. The occupants

of the other car, Bernard and Elaine Sanapaw, died from injuries they sustained in the accident. O'Brien's child and girlfriend were passengers in O'Brien's van, and both were injured.

A blood alcohol test administered approximately an hour and a half after the accident registered O'Brien's blood-alcohol level at .053, which is within the legal limit in Wisconsin. None of the police officers at the accident scene put O'Brien through any field sobriety tests. The government has not charged O'Brien with driving under the influence of alcohol, nor does it argue that O'Brien's blood alcohol was over the legal limit when the accident occurred.

Prior to the accident, O'Brien's Wisconsin driving privileges had been revoked. O'Brien had previously been convicted for leaving the scene of another accident, and twice for driving under the influence of alcohol. In addition, he had received multiple citations for operating a motor vehicle after his license had been revoked, which is a non-felony offense in Wisconsin.

O'Brien was charged with two counts of involuntary manslaughter under 18 U.S.C. sec.sec. 1112, 1152, and 1153. Specifically, the indictment charged him with causing the death of another during the commission of an unlawful act not amounting to a felony, the unlawful act being operating a motor vehicle after revocation of license in violation of Wis. Stat. sec. 343.44(1). O'Brien reached an agreement with the government to plead guilty to the charge in exchange for the government's recommendation that the court apply the Sentencing Guideline calculation consistent with "acceptance of responsibility." However, as part of his plea agreement, O'Brien acknowledged that the government would ask the court to find that his actions were "reckless" (as opposed to "criminally negligent"). Under U.S.S.G. sec. 2A1.4, a conviction for involuntary manslaughter involving reckless conduct carries a base offense level of 14, while a conviction involving criminally negligent conduct carries a base offense level of 10. The Presentence Report recommended that the court impose two sentences of 33-41 months incarceration to be served concurrently, based upon its guideline calculation of a base offense level of 13, and a criminal history category of VI. O'Brien objected to this recommendation, arguing that his conduct was criminally negligent but not reckless, and that therefore his base offense level should be 10, and that an appropriate sentence would be 24-30 months. Finding that O'Brien's conduct was reckless, the court adopted the guideline

calculations and sentence recommendations of the Presentence Report,/1 and sentenced O'Brien to two concurrent sentences of 41 months. This appeal followed.


DISCUSSION

   The sole issue presented for review is whether the district court erred by classifying O'Brien's conduct as "reckless" as opposed to "criminally negligent," and by calculating his sentence accordingly under U.S.S.G. sec. 2A1.4. A sentencing court's determination that a defendant's actions were reckless is a finding of fact which we review for clear error. See United States v. Jenny, 7 F.3d 953, 956 (10th Cir. 1993); cf. United States v. Chandler, 12 F.3d 1427, 1433 (7th Cir. 1994); United States v. Luna, 21 F.3d 874, 884, 885 (9th Cir. 1994). We may reverse such a factual finding only if "after considering all of the evidence, [we are] left with the definite and firm conviction that a mistake has been committed." United States v. Szakacs, 212 F.3d 344, 347 (7th Cir. 2000) (quotation omitted). A district court's choice between two permissible inferences from the evidence cannot be clearly erroneous. Anderson v. Bessemer City, N.C., 470 U.S. 564, 574 (1985); United States v. Bush, 79 F.3d 64, 66 (7th Cir. 1996).

   U.S.S.G. sec. 2A1.4 prescribes the appropriate sentencing ranges for defendants convicted of involuntary manslaughter under 18 U.S.C. sec. 1112. It provides that involuntary manslaughter carries a base offense level of 10 when the conduct is criminally negligent, and a base offense level of 14 when it is reckless. Application Note 1 to sec. 2A1.4 defines "reckless" as:

. . . a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. sec. 1112. A homicide resulting from driving, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless. U.S.S.G. sec. 2A1.4. (emphasis added).

Application Note 2 defines "criminally negligent" as:

. . . conduct that involves a gross deviation

from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless. . . . U.S.S.G. sec. 2A1.4.

In determining that O'Brien's conduct was "reckless," the district court relied on three factors in combination: (1) O'Brien was driving without a valid license, (2) with a blood alcohol level of .05 or greater, and (3) he passed a slow-moving vehicle in a no-passing zone while driving up a hill. While it acknowledged that, as a legal matter, "it is not the easiest thing in the world to distinguish between negligent and reckless," the court found that the three factors, when considered together, justified the conclusion that O'Brien's conduct was reckless. The court noted that since O'Brien was driving without a license and with some alcohol in his system, he should not have "take[n] any chances." The fact that O'Brien made a dangerous passing maneuver on a hill while driving with his child and girlfriend in the van, instead of applying the heightened degree of caution appropriate under these circumstances, led the court to find that his actions were reckless. As further support for its conclusion, the district court stated that "[i]t's not that Mr. O'Brien is not familiar with what's safe and what's not safe on the road. He's been involved in a lot of traffic issues in the past."

O'Brien raises several arguments in support of his contention that his conduct was merely negligent. First, he points out that he was charged with causing two deaths while driving without a valid license, and not with causing the deaths while driving under the influence of alcohol. He notes that there is no evidence that he was driving while intoxicated, and that the blood tests performed on him showed that he was not over Wisconsin's legal limit for alcohol consumption at the time of the accident. Thus, he contends that "this offense may not even have been charged but for the fact that [he] did not have his license at the time of the driving," and argues that driving without a license is in itself an innocuous offense which is not inherently dangerous and which is at most criminally negligent. He claims that U.S.S.G. sec. 2A1.4 contemplates homicides caused by driving under the influence as the typical (or "heartland") case of "reckless" involuntary manslaughter, and maintains that because his offense falls outside of that category, he should not have been sentenced for reckless conduct.

This argument fails for two reasons. First it is based on the faulty premise that sec. 2A1.4 denominates homicides caused by driving as

"reckless" only when they involve a charge of driving under the influence of alcohol or drugs. Such a conclusion cannot be reconciled with the plain language of Application Note 1, which states that the term "reckless" "includes all or nearly all convictions for involuntary manslaughter under 18 U.S.C. sec. 1112," and which draws no distinction between drunken driving offenses and other types of involuntary manslaughter. O'Brien makes much of the fact that the Application Note states that "[a] homicide resulting from driving, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless," and concludes from this that his offense should not be considered reckless as it did not involve a charge of driving under the influence. However, to say that homicides caused by driving under the influence are ordinarily reckless is not to say that homicides caused by other types of imprudent driving are ordinarily not reckless. Put another way, a charge of driving under the influence is not a prerequisite for recklessness under U.S.S.G. sec. 2A1.4. In addition, O'Brien's claim that the mere act of driving without a valid license is a relatively innocuous offense, while perhaps true as an abstract matter, is of no help to him in this case. The district court did not find that O'Brien acted recklessly merely by driving without a license. Rather, it found that the manner of his driving without a license in this particular case (i.e. his act of passing in a no-passing zone while driving uphill with some alcohol in his system) was reckless. O'Brien was not charged merely with driving after the revocation of his license, but with causing deaths while doing so. As such, any aspect of O'Brien's conduct which contributed to the fatal accident is relevant to the determination of recklessness.

Turning to the factual basis for the district court's finding of recklessness, we note that the court would not have committed clear error even if it had based its finding strictly upon O'Brien's act of passing in a no-passing zone while driving uphill. Section 2A1.4 provides that an offender acts recklessly when he is "aware of the risk created by his conduct" yet disregards the risk, and where such disregard constitutes a "gross deviation from the standard of care that a reasonable person would exercise" in the situation. The act of passing in the lane for oncoming traffic while at or near the crest of a hill, where it is impossible to know whether another car is approaching in the same lane, strikes us as the very height of recklessness. It is difficult to imagine how such a near-suicidal maneuver could be characterized as anything other than a reckless and gross deviation from any

reasonable standard of care. See generally United States v. Emerson, 128 F.3d 557, 564 (7th Cir. 1997) (upholding district court's enhancement for reckless endangerment during flight under U.S.S.G. sec. 3C1.2 where, inter alia, the defendant had engaged in high-speed passing maneuvers while attempting to evade pursuit). Indeed, courts have found far less dangerous conduct to be "reckless" under U.S.S.G. sec. 2A1.4. See, e.g., Luna, 21 F.3d at 885 (upholding district court's determination that the act of abandoning a running car in a residential area is reckless under sec. 2A1.4). Moreover, as an experienced driver, O'Brien cannot reasonably claim that he was unaware of the serious risks involved in executing such a maneuver. While he concedes that his decision to pass Howlett on the hill was a "poor" one which posed a threat to others, O'Brien argues that it did not amount to recklessness because (1) it did not pose a threat of the degree where "one would immediately see the inherent danger and imminent peril it put others in," and (2) he attempted to avoid the accident at the last minute by turning off the road into the ditch. Pursuant to our reasoning above, we reject O'Brien's first claim out of hand. His second claim is unavailing as well, because the relevant action at issue was O'Brien's decision to pass while driving up a hill, not his subsequent, desperate attempt to avoid the accident. By engaging in the reckless passing maneuver, O'Brien knowingly took the risk that he might end up in the position of having to choose between colliding with another car and driving off the road at a high speed. Each of these options posed a serious risk to his passengers and to other drivers, and the fact that he chose the safer one does not diminish the recklessness of the original action which created the risk and forced the choice. In short, while taking evasive measures might tend to show that O'Brien did not intentionally collide with the Sanapaws' car, it does not show that his original decision to pass was not reckless.

Based on its consideration of O'Brien's act of passing on a hill alone and without regard to the other factors that the court considered, we hold that the district court did not commit clear error in finding that O'Brien acted recklessly under sec. 2A1.4. More than that, we agree wholeheartedly with the finding.

Moreover, other factors present in this case compounded the recklessness of O'Brien's act, and the court's consideration of them reinforces its conclusion. As the court noted, O'Brien had been drinking prior to the accident, he was driving on a revoked license, and he had "traffic issues in the past" (to wit, he had been involved in a

prior accident, had several prior convictions for driving under the influence, and had multiple prior citations for driving after his license had been revoked). As the district court noted, the consumption of even a small amount of alcohol might adversely effect a driver's reflexes, and a driver should exercise extra care when driving after drinking. Even though he had not consumed enough alcohol to put him over the legal limit, the fact that O'Brien had been drinking at all made his decision to pass on the hill all the more reckless. O'Brien takes great pains to establish that he was not "driving under the influence" under Wisconsin law, and that the district court erroneously disregarded this by taking his drinking into account in making its finding of recklessness. However, the court did not find that O'Brien was "driving under the influence" under any legal standard, nor did it need to do so in order to consider O'Brien's drinking as a relevant factor contributing to his recklessness./2

Finally, O'Brien contends that his traffic history has nothing to do with whether he acted recklessly on the instant occasion, and that therefore the district court should not have considered it. However, a defendant's prior experiences (including prior bad acts committed while under the influence of alcohol) are relevant and may be considered by a sentencing court in making a determination of recklessness insofar as they serve to put the defendant on notice regarding the nature and potential consequences of a risk that he later undertakes. See Jenny, 7 F.3d at 956-57 (upholding district court's finding that defendant airline passenger had acted "recklessly" within the meaning of sec. 2A1.4 where defendant--who had been arrested on prior occasions for engaging in violent or abusive behavior while intoxicated--had acted abusively to others on the plane after consuming alcohol, and concluding that defendant's previous experiences with alcohol made it foreseeable that he might act abusively after drinking on the airplane). O'Brien's prior experiences with traffic accidents and with driving under the influence were relevant to the recklessness inquiry because they made O'Brien aware of the potentially harmful consequences of driving unsafely, particularly when alcohol is involved. In addition, they made it foreseeable to O'Brien that he might drive recklessly after consuming alcohol. Thus, we hold that it was not improper for the district court to consider O'Brien's prior "traffic issues" in finding that his conduct was reckless.

CONCLUSION

We hold that the district court did not err in concluding that O'Brien acted recklessly, or in calculating his sentence pursuant to the heightened base offense level applicable to reckless involuntary manslaughter under U.S.S.G. sec. 2A1.4. We have considered O'Brien's other arguments, and find them meritless. Therefore, we AFFIRM the judgment and sentence of the district court.

/1 It is unclear from the record why both the court and the Presentence Report calculated O'Brien's base offense level at 13 rather than 14, given that both found his conduct to be reckless. It is possible that the Presentence Report recommended a one level decrease in offense level for acceptance of responsibility, pursuant to the plea agreement. However, what is clear (and what is important for our purposes) is that the court rejected O'Brien's arguments that his conduct was criminally negligent and that his base offense level should therefore be 10, and it applied a higher base offense level because it found that his conduct was reckless.

/2 O'Brien also argues that the fact that he was driving on a revoked license, standing alone, did not in any way increase the risk that his driving created for others, and therefore that the court was wrong to consider this as one of three factors tending to show recklessness. However, while at times the court appears to have taken this as an independent factor, at other times it seemed to consider O'Brien's driving without a valid license (along with his checkered driving history) as evidence that O'Brien was well acquainted with the consequences of unsafe driving. Considering his driving without a valid license for such a purpose would not be improper. Moreover, even if the court erroneously considered this as a separate factor, such an error would be harmless, considering that O'Brien's passing maneuver alone would justify the court's finding of recklessness.