**UNITED STATES of America,**

v.

**Hatuey GUERRERO, Defendant.**

**No. 01 CR 677(NG).**

United States District Court,
E.D. New York.

March 26, 2002.

AUSA Eric Komittee, Brooklyn, NY, for plaintiff.

John H. Jacobs, New York, NY, for defendant.

## ORDER

GERSHON, District Judge.

Defendant Hatuey Guerrero pled guilty on December 5, 2001 to violating 49 U.S.C. § 46504, which provides that "[a]n individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, shall be" guilty of a crime.

The parties agree that Guideline § 2A5.2, Interference with Flight Crew Member or Flight Attendant, is the applicable guideline. Defendant challenges the Base Offense Level calculation of 18 sought by the government and the probation department. Under Guideline § 2A5.2(2), the Base Offense Level is raised from 6 to 18 "if the offense involved recklessly endangering the safety of the aircraft and the passenger." The parties' dispute requires a discussion of the legal issue of the meaning of this enhancement. Defendant treats the terms "endanger" and "harm" as synonymous and they are

not. Endangerment "means a threatened or potential harm and does not require proof of actual harm." *United States v. Poe*, 215 F.3d 1335 (9th Cir.2000); *see also United States v. Jenny*, 7 F.3d 953, 955 (holding that a defendant endangered an aircraft and passengers where a captain testified he felt threatened by defendant standing near the cockpit, worried about a possible scuffle, and was concerned that a defendant could inflate a passenger slide inside the plane).

Defendant urges this court not to follow *Poe* and to find that 2A5.2(a)(2) applies only if there is actual harm to the aircraft and passengers. Such a construction would mean that this Base Offense Level would apply only when an aircraft actually crashed or suffered other damage as a result of a defendant's action. Had this been the intended meaning, the term "harming" would have been more appropriate than endangering, which means "putting someone or something in danger; expos[ing] to peril or harm." BLACK'S LAW DICTIONARY 547 (7th ed.1999).

■■■ It is the government's burden to prove by a preponderance of the evidence that the enhancement of the offense level is correct. Even if I applied a heightened clear and convincing evidence standard, in light of the degree of increase to the base offense level, I would find that the government had met its burden. At an evidentiary hearing in aid of sentencing, the government offered the unimpeached and wholly credible testimony of Taylor Thorben Williams, Jr., the American Airlines pilot who captained Flight 789, on May 18, 2001 from JFK Airport to Santo Domingo, on which defendant Guerrero was a passenger. He testified that he was notified over the interphone by a crew member that there was an unruly passenger who would not listen to the crew's directions and appeared to be intoxicated. Reluctant to leave the cockpit, which he does only as briefly as possible, he asked the crew to attempt to control the passenger. For safety purposes, the design of the plane contemplates that two pilots will be in the cockpit, and it would be unsafe if one of the two were out of the cockpit for a prolonged period. However, a crew member called back in a few minutes and advised that the passenger was physically abusive and could not be controlled. At that time, Captain Williams left the cockpit briefly and entered the cabin. He tried to talk to the passenger, who he identified as defendant Guerrero, and told him to return to his seat, but Guerrero did not respond other than to call him "Captain" and push him.

The testimony of the captain, who had had 35 years of civilian and military experience as a pilot, establishes that defendant's actions exposed the aircraft and passengers to harm, *i.e.*, that he recklessly endangered their safety within the meaning of the guidelines. Captain Williams testified that he had to leave the cockpit to deal with the defendant, when he learned from the flight attendant that she could not handle the situation herself. Captain Williams testified that this increased the risk to the safety of the aircraft, which is designed to be flown by two pilots. Defendant further endangered the aircraft and passengers when he pushed Captain Williams, because this exposed the aircraft and crew to the danger of having their captain incapacitated. Not only did Captain Williams testify that he thought defendant was making the flight unsafe, but his actions confirm that he believed that defendant was endangering the aircraft and passengers. Captain Williams testified that he only left the cockpit when he con-

cluded there was a potential danger to the aircraft, and, upon returning to the cockpit, Captain Williams turned the aircraft around and returned to New York City because he concluded that it was unsafe to continue on to Santo Domingo.

Moreover, the signed statements submitted by the flight crew show that the passengers suffered actual harm. Flight Attendant Lisa Vera claims that defendant "was yelling at [flight attendant] # 1 and pushing him and other [flight attendants] in my work area." Ms. Vera states that defendant asked to write a note to the pilot, but when she went to get a pen, he "grabbed my breasts and started kissing me while I was pushed up against the galley counter." Ms. Vera calmed defendant down and sat with him in the back of the aircraft. But when she picked up the telephone to call for coffee, he:

> blew up and hit me. Two male [passengers] (large) stepped in to control him. I told them to try not to threaten him because he had told me he was going to kill us all and he had a gun (he put his finger (as if it were a gun)) to my head. The two men followed this man around the [aircraft] trying to keep him calm. The [defendant was] hitting these two men and the[y] continued to remain calm for awhile until he hit one of the men so hard he almost fell over.

At that point, some passengers tied defendant up. Flight Attendant Cappers also states that defendant said he was going to "kill us all" and threatened flight attendants, passengers, and the captain. He also states defendant hit him in the arm. Flight Attendant Torres confirms that defendant hit a large passenger.

▮ Defendant argues that the signed statements by flight attendants should not be admitted because the evidence is hearsay. However, "hearsay information may unquestionably be used in the discretion of a sentencing judge and given such weight as appears in his discretion to be merited. Such information does not violate due process requirements." *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998); *see also United States v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978). Here, the flight attendants' statements are reliable and entitled to consideration. They are internally consistent and uncontradicted. The statements are signed, and the forms on which the statements were made indicate that false statements are punishable as a class A misdemeanor. Further, the Captain's testimony is consistent with the content of the statements.

Finally, defendant does not claim that he lacked the requisite mens rea under § 2A5.2(a)(2). Certainly his voluntary intoxication, assuming that he was intoxicated and that that played a part in his conduct, would not negate the reckless nature of his conduct. *See Jenny,* 7 F.3d at 956–57; *United States v. Ignagni,* 1993 WL 366463 *4 n. 2 (4th Cir.1993).

For these reasons, Guideline § 2A5.2(2) was applied to the defendants sentencing on March 25, 2002.

**SO ORDERED.**