NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0151n.06

Case No. 24-5578

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 18, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| DEDRICK ANTHONY TAYLOR, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
|  | ) | |
|  | ) | O P I N I O N |

Before: COLE, STRANCH, and READLER, Circuit Judges.

COLE, Circuit Judge. Dedrick Anthony Taylor appeals the 84-month sentence imposed by the district court following the revocation of his supervised release. Considering the serious nature of the breach of trust, Taylor's previous supervised release violations, and Taylor's significant criminal history, the court sentenced him to 84 months of imprisonment—an upward variance from the Guidelines range of 51 to 63 months. Taylor argues that the district court imposed a substantively unreasonable sentence. For the following reasons, we affirm.

I.

In 2005, Taylor pleaded guilty to two counts of armed bank robbery and two counts of carrying a firearm during and in relation to a crime of violence. The district court sentenced him to 240 months of imprisonment followed by five years of supervised release. Taylor was released from prison and began a term of supervised release in July 2021. In February 2022, the probation office alleged that Taylor violated the conditions of his supervised release by embezzling

merchandise from his employer and by failing to pay restitution. After determining that Taylor violated the conditions of his supervised release, the district court attempted to impose a sentence that "was the least necessary" by sentencing Taylor to time served followed by a new term of supervised release set to expire on the original expiration date. (SRV Hr'g and Sentencing Proceedings, R. 169, PageID 421.)

In February 2024, the probation office again filed a petition seeking revocation of Taylor's supervised release, contending that Taylor violated his supervised release conditions by: (1) committing another federal, state, or local crime and (2) failing to pay monthly installments of restitution. Specifically, the probation office alleged that Taylor committed aggravated robbery and attempted aggravated robbery on February 16, 2024. The robbery offenses constituted a grade A supervised release violation, and the lack of restitution payment was a grade C violation. With a grade A violation and a criminal history category of VI, Taylor's Guidelines range was 51 to 63 months. The statutory maximum term of imprisonment was 192 months.

During the supervised release violation hearing, the government put forward six witnesses and proffered several exhibits to prove that Taylor attempted to rob a bank with a BB gun. The district court determined that the government proved by a preponderance of the evidence that Taylor attempted aggravated robbery. The court also concluded, and Taylor did not dispute, that he failed to make restitution payments.

The court stated the Guidelines range for the violation—51 to 63 months consecutive to any sentence that may result from any state or federal indictment on the underlying conduct—and noted that the probation office recommended a 60-month sentence. Taylor argued for a 60-month sentence, while the government countered that the court should vary upward and impose an 84-

month sentence.  The district court imposed a custodial sentence of 84 months.  Taylor now appeals.

II.

We review challenges to the reasonableness of a sentence imposed after the revocation of supervised release for an abuse of discretion.  *United States v. Morris*, 71 F.4th 475, 480 (6th Cir. 2023).  "Sentences must be both procedurally and substantively reasonable."  *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015); *see also United States v. Price*, 901 F.3d 746, 749 (6th Cir. 2018) ("Sentences imposed following the revocation of supervised release are reviewed for procedural and substantive reasonableness under the same abuse-of-discretion standard that applies to post-conviction sentences.").

Taylor challenges only the substantive reasonableness of his sentence.  We limit our analysis accordingly.  "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)."  *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).  A sentence "must be proportionate to the seriousness of the circumstances . . . and sufficient but not greater than necessary, to comply with the purposes of [18 U.S.C.] § 3553(a)."  *United States v. Axline*, 93 F.4th 1002, 1008 (6th Cir. 2024) (internal quotations and citations omitted).  In reviewing a sentence for substantive reasonableness, we must consider the "the totality of the circumstances, including the extent of any variance from the Guidelines range."  *Gall v. United States*, 552 U.S. 38, 51 (2007).

We afford considerable deference to a sentence when the district court reasonably explains how the defendant's case differs from a typical case under the relevant guideline.  *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019).  But we must conduct a "closer review" of a sentence that varies from the Guidelines range in "a mine-run case[.]"  *Id.* (internal quotations omitted).

III.

Taylor argues that his sentence was substantively unreasonable because: (A) the district court varied upward in a mine-run case; (B) the district court placed too much weight on his recidivism and the original offense conduct; and (C) the sentence resulted in sentencing disparity. We disagree.

A.

We first consider whether Taylor's case is a mine-run case. A mine-run case "is a normal case under the governing Guidelines range[.]" *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). A district court may vary above the Guidelines range if it explains how the case differs from a mine-run case for which the Sentencing Commission intends the Guidelines to apply. *Id.*; *Kimbrough v United States*, 552 U.S. 85, 109 (2007). "But to avoid unfair disparities with the typical case, we give closer review to a variance in a mine-run case." *Perez-Rodriguez,* 960 F.3d at 754. Accordingly, "in those cases that fall outside the Guidelines' 'heartland,' the district court's decision to deviate from the advisory range is entitled to the 'greatest respect,' whereas a sentence that departs from the advisory range in a 'mine-run case' warrants 'closer review.'" *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (quoting *Kimbrough*, 552 U.S. at 109).

Relying upon *Perez-Rodriguez*, Taylor argues that his case is typical, and thus, the variance warrants closer review. In *Perez-Rodriguez*, this court determined the defendant's case of illegal reentry was a mine-run case because there were no special circumstances surrounding the crime, and the Guidelines range encompassed the defendant's criminal history through his criminal history score and an enhancement for a prior illegal reentry offense. *Id.* at 755. The district court had primarily relied on one prior instance of illegal reentry and one instance of driving under the

influence in varying upward, which, this court concluded, were already accounted for in the Guidelines range. *Id.*

Taylor overlooks important distinctions between his case and *Perez-Rodriguez*, which illustrate that his case is not a typical, mine-run case. Unlike *Perez-Rodriguez*, the instant case involves the revocation of supervised release, and specifically, repeated supervised release violations. The district court relied on Taylor's prior supervised release violations and the seriousness of the breach of trust—neither of which was accounted for in the Guidelines.

Accordingly, the district court did not abuse its discretion in finding that the circumstances of Taylor's violation were not typical, and the district court's decision to vary upward from the advisory range is not entitled to closer review.

B.

Next, we examine Taylor's argument that the district court placed excess weight on his recidivism and his original offense conduct. Taylor contends that his recidivism is "not unusual and is accounted for in the Guidelines." (Appellant Br. 12.)

With respect to upward variances, we have held that "there should be a meaningful relationship between the instant offense and the prior convictions, such that the similarities 'demonstrate[] a need for deterrence beyond that already captured by the [G]uidelines.'" *Axline*, 93 F.4th at 1011 (quoting *United States v. Lee*, 974 F.3d 670, 678 (6th Cir. 2020)). And as part of our substantive reasonableness review, we may consider whether the district court gave an "unreasonable amount of weight to any pertinent factor." *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007).

We first consider whether the district court overemphasized Taylor's recidivism. Taylor's supervised release violations were the failure to pay restitution and attempted aggravated bank

robbery, and his underlying convictions—for which he served 20 years in prison—stemmed from multiple armed bank robberies. As noted above, the Guidelines range did not reflect that Taylor breached the court's trust by engaging in the same conduct underlying his original conviction. And as the court detailed, Taylor's prior criminal history included instances of related conduct. (SRV Hr'g and Sentencing Proceedings, R. 169, PageID 422 (detailing Taylor's prior criminal history including multiple instances of larceny, burglary, and aggravated burglary).) Given the breach of trust and the similarity between Taylor's prior offenses and that which led to his recidivism, the court, therefore, did not place too much weight on his recidivism.

Next, we turn to Taylor's claim regarding the original offense conduct. Taylor notes that when considering the nature and circumstances of the offense, a district court should consider only the "conduct for [the] original offenses, not the violation conduct." *Morris*, 71 F.4th at 484. Yet he nonetheless argues that "[t]he court [] placed too much weight on the original offense conduct when analyzing the proper sentence." (Appellant Br. 12.) The district court did not overemphasize the original offense of conviction—although the government detailed the nature of his original offense conviction during the hearing, the district court did not discuss his original conviction in justifying its sentence. Thus, the district court did not place excess weight on the conduct of his original offense in varying upwards.

Perhaps Taylor intended to argue that the district court overemphasized the *violation* conduct. While a district court is permitted to consider the seriousness of the violation conduct when deciding whether to sanction for the breach of trust associated with the supervised release violation, in analyzing the nature and circumstances of the offense, the district court should consider only the original offense conduct. *Morris*, 71 F.4th at 484–85. But Taylor does not

advance any arguments regarding the district court's consideration of the violation conduct, so we do not consider any such issue.

C.

Finally, Taylor argues that his sentence resulted in sentence disparity. Section 3553(a)(6) requires a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" during sentencing. 18 U.S.C. § 3553(a)(6). Taylor does not contend that the district court failed to consider or give sufficient weight to this factor.

Instead, he points to Sentencing Commission statistics, asserting that his case did not warrant "his inclusion in the 5.9 percent Grade A/Class A felonies group who receive above-range sentences." (Appellant Br. 13.) Seemingly, he argues that the district court abused its discretion by creating a sentencing disparity with other Grade A supervised release violations. He did not offer any Sentencing Commission data below. *See Axline*, 93 F.4th at 1012 ("Without specific arguments before it, the district court was not required to provide expansive explanation for this factor alone[.]"). And regardless, the creation of a sentencing disparity alone does not rise to an abuse of discretion. *See United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) ("*[U]nwarranted* disparities in sentencing is what should be avoided, *not* those that are warranted."). Taylor does not argue how the resulting disparity is unwarranted.

IV.

For the foregoing reasons, we affirm the judgment of the district court.