RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRYCE ALLEN AXLINE,

*Defendant-Appellant*.

> No. 23-5141

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:21-cr-00114-1—Thomas A. Varlan, District Judge.

Decided and Filed:  February 27, 2024

Before:  BATCHELDER, CLAY, and DAVIS, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Defendant Bryce Axline appeals the 65-month sentence imposed by the district court following his plea to the charges of vehicular homicide and vehicular assault on federal lands in violation of Tenn. Code Ann. §§ 39-13-213, 39-13-106 and 18 U.S.C. §§ 13, 7(3).  Axline argues that the district court imposed a substantively unreasonable sentence by failing to provide sufficiently compelling reasons for varying upward from the Sentencing

Guidelines advisory range by approximately 40 percent.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Instant Offense

The facts relevant to the instant case are not disputed.  Late at night on June 7, 2021, Axline and two female passengers, E.P. and S.Y., drove along the Spur, a winding road connecting Gatlinburg and Pigeon Forge within the Great Smoky Mountains National Park.  After running off the road, Axline lost control of his car and crashed into an embankment at over 90 miles per hour.  The three 19-year-olds were immediately rushed to the hospital.  Tragically, E.P. died after arriving at the medical center, and S.Y. sustained life-altering injuries that have significantly impaired her physical and mental abilities.

During Axline's treatment at the hospital, a blood sample was collected, revealing a Blood Alcohol Concentration ("BAC") level of over 0.02, which exceeded the *per se* intoxication level for someone under 21.[1]  The presentence report indicates that "E.P.'s death and S.Y.'s serious bodily injuries were the proximate result of [D]efendant's intoxication."  PSR, R. 43, Page ID #188.  Following the accident, an expert analyzed the crashed vehicle's Airbag Control Module and determined that the vehicle "was fully accelerated at 100 percent five seconds before the crash and was traveling 90 mph on the Spur, which has a maximum speed limit of 45 miles per hour."  *Id.*  On September 15, 2021, a grand jury in Knoxville returned a five-count indictment against Axline, and he eventually pleaded guilty to Count One (Vehicular Homicide in violation of T.C.A. § 39-13-213) and Count Two (Vehicular Assault in violation of T.C.A. § 39-13-106).[2]

---

[1]Multiple containers of an alcoholic beverage were located inside of Axline's vehicle.  A toxicologist later analyzed the blood sample and predicted that, at the time of the accident, Axline's BAC was between 0.065 and 0.081.

[2]These counts implicate Tennessee state law.  However, as described in Axline's plea agreement, the Assimilative Crimes Act, 18 U.S.C. § 13, makes applicable on federal lands—such as the Smoky Mountains—certain criminal laws of the state in which the federal land is located.  Axline's plea agreement specified that, pursuant to 18 U.S.C. § 13, he would be "subject to a like punishment" under the penalties specified by Tennessee law.  Plea Agreement, R. 39, Page ID #154.

Axline's presentence report described the tragic events of June 7, 2021, and detailed the impact of his actions on the victims. After consulting the most analogous offense Guidelines for his two convictions in accordance with U.S.S.G. § 2X5.1, the presentence report calculated a base offense level of 22. The report then added a two-point increase pursuant to the grouping rules listed in U.S.S.G. § 3D1.4(a)–(c), which applied to account for the harm to two different victims. Finally, the offense level was decreased by three points to reflect Axline's acceptance of responsibility, resulting in a total offense level of 21.

Turning to Axline's criminal history calculation, the presentence report assigned him one point for a prior possession of marijuana and drug paraphernalia.[3] By combining Axline's criminal history category of I with his total offense level of 21, the Sentencing Guidelines recommended an imprisonment range of 37 to 46 months. The presentence report did not recommend a variance outside of the Guidelines range, and neither party objected to the findings of the report. However, the government subsequently filed a motion for an upward variance, arguing that the 18 U.S.C. § 3553(a) factors warranted a more serious sentence than recommended by the Guidelines advisory range. The motion highlighted the tragic circumstances of the case, Axline's prior drug and alcohol related behavior, and the need to deter both Axline and the general public from drunk driving. In contrast, Axline requested 37 months' imprisonment and discussed his troubled childhood, the lack of a need for specific deterrence due to his post-accident sobriety, and his immense remorse.

## B. Sentencing

Axline appeared for sentencing on February 2, 2023. After hearing the victim impact statement of E.P.'s father, the district court heard arguments from both sides that largely mirrored their respective sentencing memorandums. The government argued that the district court should vary upwards from the advisory range because two young lives were completely changed due to "the result of not just the [D]efendant's underage drinking, not just the

---

[3]The marijuana and paraphernalia were seized during a traffic stop, and Axline was operating the vehicle. The presentence report also detailed two additional offenses that are related to alcohol and marijuana. These other two offenses did not result in a point assignment for purposes of calculating Defendant's criminal history category.

[D]efendant's reckless driving, but both." Tr. Sent'g Hr'g, R. 68, Page ID #382. Axline's attorney argued that a sentence within the Guidelines range was sufficient.

Particular emphasis was placed on the fact that, had Axline been sentenced in state court, the state law sentencing range for Tennessee's vehicular homicide by intoxication is 8 to 12 years—a much higher recommendation than the parallel federal Sentencing Guidelines. Pursuant to Axline's plea agreement and the Assimilative Crimes Act, state law is applicable to guide the proper punishment for conduct occurring on lands reserved by the federal government, such as the Great Smoky Mountains National Park. *See* 18 U.S.C. §§ 13, 7(3). Therefore, the government pointed to *State v. Pinhal*, in which the defendant received six years' imprisonment for vehicular homicide by reckless conduct in similar circumstances. No. 2019-A-155, 2020 WL 3966843, at *8 (Tenn. Crim. App. July 14, 2020). In response, Axline's attorney emphasized that the state court system, in contrast to the federal system, allows for parole eligibility, which accounts for the disparity between the state and federal imprisonment ranges.

Following arguments by both parties and Axline's statement to the court, the district court discussed the factors delineated in 18 U.S.C. § 3553, noting that "this is a difficult case and one to which the [c]ourt has given much thought, both before and during [the] hearing." Tr. Sent'g Hr'g, R. 68, Page ID #404. In ruling upon the government's motion for upward variance, the court noted the seriousness of the offense, involving both underage drinking and extremely reckless driving. Further, although Axline only received one criminal history point, his record does reflect "previous unlawful alcohol and controlled substance consumption," including an offense that occurred less than two months before the car crash. *Id.* at Page ID #409. The district court also recognized the need for specific and general deterrence, and explained the importance of deterring the frequent drunk driving in the Great Smoky Mountains National Park. Finally, after noting that Axline's attorney submitted no evidence of unwarranted sentence disparities in his sentencing memorandum, the court nonetheless found that any disparity analysis would not "alter its own § 3553 analysis in this case." *Id.* at Page ID #417. After balancing these factors against Axline's difficult childhood and rehabilitation efforts, the district court found that "the circumstances of this case [] fall outside the heartland of similar cases before the [c]ourt," warranting an upward variance. *Id.* at Page ID #423.

Based on the above explanation, the district court imposed a sentence of 65 months' imprisonment followed by three years of supervised release.  After preserving his objection to the upward variance, Axline appealed in a timely manner.

## II.  DISCUSSION

### A.  Standard of Review

This Court reviews the district court's sentencing decisions under a deferential abuse of discretion standard.  *See Gall v. United States*, 552 U.S. 38, 46 (2007).  Under this standard, we will not disturb a district court's ruling unless it was "based on an error of law or a clearly erroneous finding of fact," or when we are "otherwise left with the definite and firm conviction that the district court committed a clear error of judgment."  *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir. 2014).  The mere fact that the reviewing court "might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (citing *Gall*, 552 U.S. at 51).

The parties do not dispute the procedural reasonableness of Axline's sentence.  Instead, Axline contends that "[t]he district court imposed a substantively unreasonable sentence when it varied upward by 40 percent from the advisory guideline range in this tragic drunk driving case."  Pet'r's Br., ECF No. 26, 23.  For a sentence to be substantively reasonable, "it must be proportionate to the seriousness of the circumstances of the offense and offender, and 'sufficient but not greater than necessary, to comply with the purposes' of § 3553(a)."  *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)).  "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors[,] or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (citation omitted).

Where, as in this case, the district court determines that a defendant's Guidelines range fails to properly reflect the § 3553(a) factors, it must provide a "sufficiently compelling" justification for any variance.  *Gall*, 552 U.S. at 50.  The district court's deviation from the

Guidelines range thus requires an explanation regarding "why the defendant's unique circumstances fall outside the 'heartland' of cases affected by the relevant guideline." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). When the court provides a reasonable explanation as to why the defendant's case falls outside the heartland, the sentence is afforded significant deference; on the other hand, a sentence that varies from the advisory range in "a mine-run case" will necessitate a "closer review." *Id.* at 709 (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009)).

## B. Analysis

Axline argues that his sentence was substantively unreasonable because: (1) the Guidelines range already accounts for the serious harm that Axline caused when he drank illegally and sped recklessly; (2) the Guidelines range already accounts for Axline's minimal criminal history, and the district court placed too much weight on his prior offenses that did not involve driving under the influence; and (3) the above-range sentence is an outlier that creates a risk of sentencing disparities. However, in this case, the district court offered an extensive explanation for why it found that the upward variance was warranted. Due to the large degree of deference that we must afford the district court, each of Axline's arguments fails for the reasons contained herein.

### 1. *The Severity of the Crime*

The district court justified its upward variance based in part upon the seriousness of the offense, stating, "[t]o say that the offense conduct and its consequences were of a serious nature is certainly an understatement of the highest regard." Tr. Sent'g Hr'g, R. 68, Page ID #411. Highlighting that Defendant engaged in two perilous acts, both underage drinking and extremely reckless driving, the district court determined that it "must . . . take into consideration the need to reflect the extreme seriousness of the offense conduct herein." *Id.* at Page ID #412.

Axline argues that the district court placed too much weight upon the nature and seriousness of the offense because the Guidelines already account for the seriousness of vehicular homicide. Explaining his argument, Axline notes that the Sentencing Commission

previously increased the base offense level in U.S.S.G. § 2A1.4(a)(2) for reckless involuntary manslaughter from 14 to 18 in response to concerns regarding the under-punishment of vehicular homicide.  In addition, the Guidelines already incorporate a four-level increase for drunk driving, totaling a base level of 22 "if the offense involved the reckless operation of a means of transportation."  *Id.* § 2A1.4(a)(2)(B).  Finally, two levels are already added to counts of equal seriousness when there is more than one victim.  *See id.* §§ 2A1.4(b), 3D1.2.  Therefore, based on the offense level points that the Guidelines alone attribute to the aggravating circumstances of this case, Axline argues that a further upward variance constituted an abuse of discretion.

Contrary to Axline's arguments, the Involuntary Manslaughter Sentencing Guideline does not necessarily contemplate the lethal combination of Axline's decision to drink underage *and* his decision to fully accelerate his car at over 90 miles an hour on a winding mountain road. Although U.S.S.G. § 2A1.4 notes that a homicide based upon driving under the influence should normally be treated as reckless, a charge of driving under the influence is not a prerequisite for recklessness under this Guideline.  *See, e.g.*, *United States v. O'Brien*, 238 F.3d 822, 826 (7th Cir. 2001) ("[Defendant's argument] is based on the faulty premise that § 2A1.4 denominates homicides caused by driving as 'reckless' only when they involve a charge of driving under the influence of alcohol or drugs."); *United States v. Singer*, 825 F.3d 1151, 1158 (10th Cir. 2016) ("Although the base offense level of 22 that was applied by the district court in this case took into account the fact that the offense of conviction (involuntary manslaughter) 'involved the reckless operation of a means of transportation,' U.S.S.G. § 2A1.4, it most certainly did not take into account [defendant's] blood alcohol level. . . .").  Accordingly, Axline's reckless driving alone could subject him to the base offense level of 22, and the district court did not abuse its discretion in determining that the Guidelines did not adequately reflect the seriousness of Axline's *two* deliberate choices that permanently altered multiple lives.  Even further, the Guidelines also did not contemplate the fact that the vehicle was accelerated *to its full capacity* on a winding road in the Smoky Mountains, which validly contributed to the district court's judgment that the degree of recklessness exhibited by Axline was outside of the heartland of similar convictions.

Likewise, the grouping rules contained in Chapter Three of the Sentencing Guidelines do not necessarily contemplate the degree of severity attributable to multiple deaths or multiple injuries. In fact, the general grouping rules in Chapter Three cover an array of less serious conduct. As the Tenth Circuit recognized in *United States v. Lente*,

> [A] defendant convicted of several counts of minor assault, burglary, or possessing contraband in prison would face the same incremental increase per count as an involuntary manslaughter defendant who kills several people. *See* U.S.S.G. § 3D1.2(d) (listing §§ 2A2.3 (Minor Assault), 2B2.1 (Burglary), and 2P1.2 (Possessing Contraband in Prison) as offenses that are also separately grouped).

759 F.3d 1149, 1162 (10th Cir. 2014). Therefore, the district court could fairly recognize that the grouping rules resulting in a mere two-point increase insufficiently accounted for the severity of E.P.'s death and S.Y.'s permanent injuries.

Relying upon *United States v. Perez-Rodriguez*, Axline further argues that his crime—conceding it was certainly a severe offense—nonetheless constituted a "mine-run" case, or a "normal case under the governing Guidelines range." 960 F.3d 748, 754 (6th Cir. 2020). In *Perez-Rodriguez*, this Court held that the defendant committed a mine-run case of illegal reentry, as there were no special circumstances surrounding the crime, and he only had one prior conviction for illegal reentry and one prior DUI conviction. *Id.* at 758. Because *Perez-Rodriguez* involved typical circumstances, this Court applied a closer review and determined that an upward variance of 200% from the low end of the Guidelines range was not substantively reasonable. *Id.* Based on *Perez-Rodriguez*, Axline argues that extreme speeding, driving under the influence, and serious injuries are "not unusual" characteristics of reckless involuntary manslaughter. Pet'r's Br., ECF No. 26, 35.

However, important distinctions between the instant case and *Perez-Rodriguez* illustrate that Axline's case is not a typical, mine-run case. First, as explained above, the Guidelines do not necessarily account for the confluence of his underage drinking and extremely reckless driving, nor do they necessarily adequately account for the effect of Axline's actions on multiple victims. Second, the district court in this case relied on significantly more than one sentencing factor in making its determination. Distinguishably, the principal error in *Perez-Rodriguez* was

that the district court placed entirely too much weight on one instance of illegal reentry (when the average offender has 3.2 prior deportations) and one instance of driving under the influence (which occurred several years prior), both of which were already reflected in the advisory sentencing range.  960 F.3d at 755 (noting that the district court's reasoning was "primarily framed by Perez-Rodriguez's 'pattern of continuing to violate our laws, and come back to the country for whatever reason'").  In contrast, the district court noted that Axline's case was unusual not only due to his criminal history involving repeat substance abuse offenses, but also the lethal combination of his underage drinking and reckless driving, as well as the victims' statements and the lasting impact of Axline's crimes.  With significantly more reasoning than the district court in *Perez-Rodriguez* provided, the district court in this case did not abuse its discretion in finding that the circumstances of the tragic incident were not typical and accordingly warranted an upward variance.

Finally, as Axline concedes, this Court has consistently "rejected the argument that a sentence is substantively unreasonable because the § 3553(a) factors on which the district court relied to sentence the defendant outside the advisory Guidelines range were already reflected in the Guidelines calculation."  *United States v. Rossi*, 422 F. App'x 425, 436 (6th Cir. 2011); *see also United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (collecting cases).  Therefore, even if certain aspects of the seriousness of the instant offense are reflected in the Guidelines calculation, this argument alone cannot defeat the district court's determination that an above-Guidelines sentence was necessary.

2.  *The Defendant's Criminal History*

Axline also argues that the district court overemphasized his minimal criminal history by crediting misdemeanor convictions and other instances of conduct that resulted in no criminal history points.  During sentencing, the district court noted that Axline's criminal history "display[ed] a pattern of intentional and reckless conduct leading up to the extremely serious felony offenses for which [D]efendant now faces sentencing."  Tr. Sent'g Hr'g, R. 68, Page ID #422.  In challenging the district court's conclusion, Axline argues that the Guidelines' criminal history score already accounts for repeated or serious conduct.  Further, Axline contends that his

prior misdemeanors were not sufficiently similar to the instant offense, as they lacked a meaningful connection to the instant offenses of vehicular assault and vehicular homicide.

Axline is correct that the district court relied upon his criminal history in imposing its upward variance, among several other factors. Specifically, the court noted that Axline had been arrested or cited on four separate occasions between the ages of 18 and 19, all of which involved drugs and/or alcohol. The district court expressed particular concern with Axline's most recent conviction in April 2021, noting that "the [D]efendant committed the instant offense only two months after the underage alcohol offense in which he was apparently found intoxicated and in possession of alcohol containers at the scene of a fight." *Id.* at Page ID #421–22. Further underscoring these tendencies, the district court noted Defendant's admission to the daily use of marijuana and regular consumption of alcohol.

A sentencing court can consider a defendant's personal history and characteristics, including his criminal history, in its analysis of the 18 U.S.C. § 3553(a) factors, "even when the defendant's [G]uidelines range already reflects it." *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020). However, particularly with regard to upward variances, there should be a meaningful relationship between the instant offense and the prior convictions, such that the similarities "demonstrate[] a need for deterrence beyond that already captured by the [G]uidelines." *Id.* at 678. By this standard, the district court did not abuse its discretion in finding that Axline's prior underage substance abuse is sufficiently related to the instant conviction, because the instant offense was likely caused—or, at the very least, exacerbated—by Axline's drinking. And merely two months prior to the instant offense, Axline was charged with an underage alcohol offense. *Cf. United States v. Johnson*, 934 F.3d 498, 500 (6th Cir. 2019) (highlighting that the instant firearms offense was committed just two days after his release for the fourth firearm offense).

Nonetheless, the link between Axline's prior criminal history and the instant offense is weaker than cases that have affirmed an upward variance based principally on the defendant's pattern of criminal history. Although this Court is generally wary of upward variances based primarily on criminal history without a strong showing of similarity, the instant case does not hang its hat on Axline's criminal history alone. Instead, "the district court considered [Axline's] criminal history as one of many factors in its decision to vary upward, including the nature and

circumstances of the offense, the history and characteristics of the defendant, [the] need to provide just punishment, [and] adequate determent." *United States v. Tucker*, 838 F. App'x 989, 992 (6th Cir. 2021); *see also United States v. Gates*, 48 F.4th 463, 478 (6th Cir. 2022) ("[A] sentence is not necessarily substantively unreasonable because a court places greater weight on some factors than others.") (citing *Dunnican*, 961 F.3d at 881).

In particular, Axline omits the fact that the district court considered his criminal convictions against the backdrop of his history and characteristics. *See United States v. Cechini*, 834 F. App'x 201, 207 (6th Cir. 2020) (approving of the district court taking note of the defendant's unrelated criminal history when properly balanced against other § 3553(a) factors). Beyond the district court's concern with Axline's prior offenses generally, the court specifically noted the temporal proximity of Axline's illegal conduct in the instant case with his most recent alcohol-related conviction. Merely two months had passed since Axline's prior underage alcohol offense; less than one month had passed since he was convicted for this prior offense. Axline also admitted to daily use of marijuana and regular consumption of alcohol, despite his young age, further underscoring the district court's concerns. Therefore, the combination of his criminal history with his characteristics fairly paints a picture of a young man "display[ing] a pattern of intentional and reckless conduct leading up to the [instant] extremely serious felony offenses," further warranting an upward variance. Tr. Sent'g Hr'g, R. 68, Page ID #422.

### 3. *The Avoidance of Unwarranted Sentence Disparities*

Finally, Axline argues that the sentence creates "an acute risk of unwarranted disparities." Pet'r's Br., ECF No. 26, 46. Pursuant to 18 U.S.C. § 3553(a)(6), sentencing courts must consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." This factor considers national disparities between similarly-situated defendants. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). Although Axline did not raise the issue at sentencing, he points to Sentencing Commission statistics on appeal, arguing that none of the nine defendants with a criminal history category of I who were sentenced using comparable Guidelines received an above-range sentence within the past five years. Additionally, Axline points to a purportedly similar case of reckless, drunk driving in the Smoky Mountains in which the defendant received

a 36-month sentence.  *See United States v. Sizemore*, No. 3:15cr146 (E.D. Tenn. Nov. 3, 2015).

First, it is important to note that Axline's plea agreement in this case stipulated that he would be subject to a punishment similar to what he would receive under Tennessee law.  *See* 18 U.S.C. § 13.  As described above, Axline would have faced 8 to 12 years' imprisonment for Count One and 2 to 4 years' imprisonment for Count Two, which could run consecutively or concurrently.  The district court noted that "at first glance," the Guidelines range does not seem to impose a like punishment on Axline.  Tr. Sent'g Hr'g, R. 68, Page ID #419.  However, acknowledging that a state sentence would include the possibility of parole, the district court recognized that this backdrop was merely helpful and still used Axline's federal guidelines as a starting point.  *Cf. United States v. Clark*, 434 F.3d 684, 688 (4th Cir. 2006) (Motz, J., concurring in the judgment) (noting that 18 U.S.C. § 13 is an example of a case "in which consideration of state sentences will not conflict with § 3553(a)(6) . . . and may in fact help courts to apply correctly the other factors"); *United States v. Key*, 599 F.3d 469, 476 (5th Cir. 2010) (affirming above-guidelines sentence in a case brought pursuant to 18 U.S.C. § 13, where "[a]ny disparity vanishes . . . when [defendant's] sentence is compared to others imposed for Intoxication Manslaughter under Texas law").

In addition to the consideration of the higher punishment required by state law, the district court stated that Axline did not provide it with any facts related to the creation of a potential sentencing disparity, and, even if he did, the disparity would not alter the court's § 3553 analysis in this case.  *Cf. United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) (explaining that only "unwarranted" sentencing disparities should be avoided, "not those that are warranted").  Without specific arguments before it, the district court was not required to provide expansive explanation for this factor alone, particularly considering its detailed explanation related to other § 3553(a) factors.  *See, e.g.*, *United States v. Begley*, No. 21-5760, 2023 WL 2991868, at *5 (6th Cir. Apr. 18, 2023) ("Though [defendant] may have preferred that the district court weigh [§ 3553(a)(6)] more heavily, the district court explained why the § 3553(a) factors supported his original sentence, and it was not required to provide more expansive explanation for this factor alone."); *Rossi*, 422 F. App'x at 434–35 (noting that the defendant did

not raise any disparity arguments before the district court and holding that sentence was substantively reasonable).

Notably, although similarly tragic, the comparator case that Axline relies upon is distinguishable from the instant case, highlighting the individualized nature of sentencing. *Cf. United States v. Tanner*, 382 F. App'x 421, 428 (6th Cir. 2010) (noting that a single instance of a sentencing disparity is unpersuasive in the evaluation of the district court's analysis of § 3553(a)(6)). For example, Sizemore had a criminal history score of zero, and the main dispute during Sizemore's sentencing hearing involved the amount of restitution payable to the victims. Additionally, unlike Axline, Sizemore could legally drink, and his BAC was not over the legal limit. Finally, the government in the Sizemore case asked for a sentence *within* the Guidelines range of 30 to 37 months' imprisonment, followed by three years of supervised release.

Even crediting Axline's presented statistics, where the district court based its upward variance on several other factors delineated in 18 U.S.C. § 3553(a), it is not required to consider national sentencing statistics, regardless of whether it enters a within-Guidelines sentence or one that falls outside of the Guidelines range. *United States v. Hymes*, 19 F.4th 928, 936 (6th Cir. 2021) (expressly rejecting imposing a requirement of consulting Sentencing Commission data before imposing a sentence). As illustrated by the above evaluation of the *Sizemore* case, the Sentencing Commission data provided on appeal does not necessarily illuminate the differences among offenders within the same criminal history category. *See United States v. Cole*, No. 22-1163, 2023 WL 3001571, at *5 (6th Cir. Apr. 19, 2023). Further, this factor is one among many, and the district court did not abuse its discretion in relying on other factors to impose a higher sentence. *See, e.g.*, *United States v. Sanderson*, No. 21-5900, 2022 WL 1133114, at *6 (6th Cir. Apr. 18, 2022); *Gates*, 48 F.4th at 478.

## III.  CONCLUSION

While the district court imposed a lengthy sentence of 65 months in prison—19 months over the top of the recommended Guidelines range—the sentence was substantively reasonable. The district court thoroughly assessed the seriousness of Axline's offense, his history with underage substance abuse, and the importance of specific and general deterrence. Given the

deference that this Court affords the district court on its balancing of the 18 U.S.C. § 3553(a) factors, the district court acted within its discretion in varying Axline's sentence above the Guidelines range. For the reasons set forth above, we **AFFIRM** the judgment of the district court.