NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0081n.06

No. 25-3320

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 10, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| TYRIQUE K. DAVIS, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: CLAY, KETHLEDGE, and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Tyrique Davis appeals from the district court's judgment sentencing him to a 48-month term of imprisonment for Bank Larceny under 18 U.S.C. §§ 2113(b) and 2. For the reasons set forth in this opinion, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A. Factual Background

On October 3, 2023, Davis was visiting Ohio from his home in Houston, Texas. He and two other men, all wearing masks, undertook to steal a Huntington Bank automated teller machine (ATM) from a Giant Eagle supermarket in Summit County. The three men attached a chain to a stolen pickup truck and, equipped with a crowbar, wrapped the chain around the ATM as well. They used the pickup truck and chain to break open the ATM. A Springfield Township Police Officer interrupted the incident, and the three men fled with cash boxes from the ATM. The

Officer chased the men on foot and apprehended Davis, and additional Officers retrieved three cash boxes, which contained a total of $45,346. The ATM was damaged, costing Huntington Bank $28,733.

Davis' background presents some mitigating facts. Davis was 26 years of age at the time of sentencing. He experienced abuse by his biological mother when he was a child and struggles with mental health, in part as a result of that abuse. When he was eight years old, Davis was diagnosed with attention deficit hyperactivity disorder and bipolar disorder, and he began using marijuana at age 14 but was sober for two years beginning in 2022. Davis did not graduate high school. At the time of his arrest for the offense in this case, Davis had been working at L&L Auto in Houston, Texas, for nine months. Otherwise, his only reported employment history entails two months at Texas Concrete in 2019.

The ATM incident on October 3, 2023, was not Davis' first encounter with law enforcement. Davis' criminal history extends back over a decade, to when he was 14 years old. He has prior juvenile convictions for property damage, marijuana possession, burglary, and evading detention. He has prior adult convictions for assault of a public servant, burglary, aggravated assault with a deadly weapon, and, notably, attempted theft of an ATM.

The public servant assault conviction was based on an incident in 2016 wherein Davis threatened to throw rocks at Correctional Officers who sought to apprehend him. After one of the Officers administered oleoresin capsicum spray and the Officers were trying to restrain him, Davis struck one of the Officers in the face, causing "pain, discomfort, and redness to the facial area." PSR, R. 20, PageID #110. Davis violated his probation for that conviction and ultimately served a two-year term of imprisonment.

Davis' conviction for aggravated assault with a deadly weapon was based on conduct that transpired in 2019. According to the complainant in that case, Davis fired a gun at the complainant multiple times because the complainant refused to join Davis' gang. Davis served a three-year term of imprisonment for that offense.

Later in the same year, an Uber driver observed two men, one of whom turned out to be Davis, with a stolen truck, attaching a chain to an ATM machine and unsuccessfully attempting to steal it. When Houston Police Officers pursued the two men, they fled on foot. Police "later determined that this offense was gang related." *Id.* at PageID #112. Davis served a three-year term of imprisonment for that offense, concurrently with his imprisonment for the preceding aggravated assault.

## B. Procedural Background

On September 5, 2024, a federal grand jury charged Davis in a one-count indictment for Bank Larceny, in violation of 18 U.S.C. §§ 2113(b) and 2, based on Davis' conduct on October 3, 2023. Davis ultimately pled guilty without a plea agreement.

The presentence investigation report (PSR) calculated a base offense level of six under United States Sentencing Guidelines (U.S.S.G.) § 2B1.1(a)(2). It then applied a six-level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) for a total loss in excess of $40,000, including $28,733 to repair the ATM and $45,346 taken from the ATM. Davis had submitted a written statement accepting responsibility, apologizing, and stating that he wanted "to turn [his] life around" and take advantage of the Bureau of Prison's educational and vocational offerings. *Id.* at PageID #106. For those reasons, the PSR decreased Davis' offense level by two, making his total offense level 10.

The PSR calculated a criminal history score of 12, resulting in a criminal history category of V. It gave Davis no points for juvenile offenses, three points for the public servant assault, three points for the burglary, three points for the aggravated assault with a deadly weapon, and three points for the attempted ATM theft.

The maximum term of imprisonment for Davis' violation of 18 U.S.C. § 2113(b) was 10 years, and the guidelines range was 21 to 27 months. The PSR identified age as a factor that might warrant departure from the guidelines range, under U.S.S.G. § 5H1.1, and history and characteristics of the defendant as potential grounds for a variance. It additionally noted that pursuant to 18 U.S.C. § 3553(a)(6) the district court should "consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* at PageID #122. In the preceding five years, courts had sentenced 69 defendants with final offense levels of 10 and criminal history categories of V under U.S.S.G. § 2B1.1. For the 65 (94%) of them who received a term of imprisonment, the average length of imprisonment was 19 months, and the median was 21 months.

Davis' sentencing memorandum emphasized Davis' acceptance of responsibility, young age, particularly at the time of his prior criminal conduct, potential for rehabilitation, and other mitigating factors. It discussed Davis' upbringing, mental health challenges, interest in further treatment, experiences with drug and alcohol abuse at a young age, educational challenges, and interest in obtaining a GED. It also underscored the non-violent nature of the larceny offense. Davis objected to the potential inclusion of the $45,346 that Davis and the other participants had carried away from the ATM in the calculation of loss, arguing that he had not obtained any proceeds from the machine.

At Davis' sentencing hearing, the district court rejected Davis' argument that the money that the ATM had contained should be excluded from the amount of loss. Davis had "clearly intended to take the cash, whatever the number might have been, from the machine." Sentencing Tr., R. 33, PageID #188. Furthermore, Davis and the other two participants did in fact take the cash from the ATM into their possession and only found themselves emptyhanded because the police intervened. Therefore, the district court confirmed that Davis' offense level was 10. It additionally confirmed that Davis' criminal history category was V and that the resulting guidelines range was 21 to 27 months.

Defense counsel argued that Davis had been honest and respectful throughout the proceedings, that he had accepted full responsibility, and that he had a fraught background and had "been quite a bit off course in his life to date." *Id.* at PageID #192. Davis' offense had not involved directly interacting with a victim or "traumatizing a bank teller," Davis had stayed out of trouble while incarcerated for this offense, and he wanted to focus on his education and vocational training. *Id.* at PageID #193. In his brief allocution, Davis accepted responsibility and apologized.

The government recommended an above-guidelines sentence of three years due to Davis' criminal history, including his most recent offense, which resembled this one and for which Davis had spent three years in prison.

The district court proceeded to assess the 18 U.S.C. § 3553(a) factors. It described the nature and circumstances of the offense and then turned to Davis' history and characteristics. It noted Davis' history of violence, including convictions for assault of a public servant and aggravated assault with a deadly weapon, and his prior conviction for "nearly the identical theft scheme here." *Id.* at PageID #198. Davis had been released from imprisonment for the prior

attempted ATM theft just over a year before he committed the present one. Furthermore, Davis had not historically "done well while on probation." *Id.*

Regarding sentencing disparities, the district court concluded that Davis' sentence would be "substantially higher" than the average or median sentence that the PSR indicated due to Davis' violent history, previous terms of imprisonment, and the similarities between the instant offense and Davis' most recent prior offense. *Id.* at PageID #199.

Finding that Davis' preceding three-year term of imprisonment had not accomplished the purposes of just punishment, deterrence, protecting the public, reflecting the seriousness of the offense, and improving the defendant's conduct or condition, the district court selected a four-year term. The district court acknowledged the magnitude of that variance and that Davis had not used or threatened violence in committing the instant offense but concluded that "the facts and circumstances [including the involvement of law enforcement] clearly indicate[d] this defendant [was] a danger to the community." *Id.* at PageID #200. The district court additionally ordered a three-year term of supervised release, a $100 special assessment, and $28,733 in restitution to Huntington Bank. Davis objected to the upward variance and timely appealed.

## II.  DISCUSSION

The task of a sentencing court is to "impose a sentence sufficient, but not greater than necessary," to achieve the statutory purposes of sentencing, namely:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a). Additionally, the court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available and

advised under the guidelines, pertinent policy statements, the need to avoid unwarranted sentence disparities, and the need to provide restitution to victims. *Id.*

Davis challenges the procedural and substantive reasonableness of his sentence, but he does not clarify which of his arguments are procedural or substantive. We understand the procedural components of Davis' appeal to be that the district court miscalculated the guidelines range based on the amount of loss, impermissibly varied from the guidelines based on facts about him and his offense that the guidelines already captured, failed to account for age as a mitigating factor, and erred by concluding that Davis is a danger to the community. We understand the substantive component to be that the district court improperly balanced the § 3553(a) factors by weighing criminal history, deterrence, and protecting the public too heavily and by weighing mitigating factors and the need to avoid sentencing disparities too lightly.

## A. Standard of Review

We review the reasonableness of a sentence imposed by a district court "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Wilson*, 75 F.4th 633, 636 (6th Cir. 2023) (quoting *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021)).

## B. Procedural Reasonableness

Procedural errors are those pertaining to the steps the district court takes to craft a defendant's sentence. A sentence might be procedurally unreasonable if the district court improperly calculates the guidelines range, treats the guidelines range as mandatory, ignores the 18 U.S.C. § 3553(a) factors, bases the sentence on clearly erroneous facts, considers impermissible sentencing factors, fails to address the defendant's non-frivolous arguments, or imposes the

sentence without adequate explanation. *Id.*; *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018); *United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009). Davis contends that the district court miscalculated his guidelines range, considered impermissible factors in deciding to vary from it, failed to consider all of his mitigation arguments, and made an erroneous finding of fact regarding the danger that Davis poses to the community.

**Loss Amount**

Davis makes two arguments that the district court miscalculated his guidelines range by increasing his offense level by six based on the amount of loss his offense caused. First, he contends that the guidelines do not define "loss" except in commentary and that the district court erred by relying on the commentary. Second, Davis argues that he could not have known exactly how much money the ATM contained and never possessed those contents, so the district court should not have included that $45,346 in its calculation of intended loss. We review a district court's methodology for calculating the amount of loss under the guidelines *de novo*, but we review the factual calculation for clear error. *United States v. Maddux*, 917 F.3d 437, 450 (6th Cir. 2019) (citing *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010)).

Davis is mistaken that this case presents a commentary interpretation issue. The district court sentenced Davis under the 2024 Guidelines Manual (and this opinion refers to the same). Under the guideline for larceny, a defendant's offense level increases incrementally based on the amount of loss the offense caused. U.S.S.G. § 2B1.1(b)(1). If the loss was greater than $40,000, as the district court determined in Davis' case, the offense level increases by six. *Id.* § 2B1.1(b)(1)(D).

Davis' assertion to the contrary, § 2B1.1(b)(1) does define loss. "Loss is the greater of actual loss or intended loss." *Id.* § 2B1.1(b)(1) note (A). Actual loss is "the reasonably foreseeable

pecuniary harm that resulted from the offense." *Id.* § 2B1.1(b)(1) note (C)(i). Pecuniary harm is "harm that is monetary or that otherwise is readily measurable in money." *Id.* § 2B1.1(b)(1) note (C)(iii). Reasonably foreseeable pecuniary harm is "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* § 2B1.1(b)(1) note (C)(iv). Finally, intended loss is "the pecuniary harm that the defendant purposely sought to inflict" even "includ[ing] intended pecuniary harm that would have been impossible or unlikely to occur . . . ." *Id.* § 2B1.1(b)(1) note (C)(ii).

Those definitions previously sat in the commentary to the guideline, but pursuant to the 2024 notice and comment process, the Sentencing Commission relocated them to the guideline proper. *See* Proposed Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, 88 Fed. Reg. 89143 (Dec. 26, 2023); *United States v. Prather*, 138 F.4th 963, 974 & n.1 (6th Cir. 2025). Davis' argument that the district court erred by relying on the commentary fails, as the district court did not rely on the commentary but on the guideline itself.

As for the district court's calculation of loss, "[t]he court need only make a reasonable estimate of the loss[,]" and "the court's loss determination is entitled to appropriate deference." U.S.S.G § 2B1.1 cmt. n.3(B). "We defer to the district court's loss calculation so long as it is 'plausible on the record as a whole[,]'" *United States v. Mitan*, No. 21-5834, 2025 WL 1392242, at *5 (6th Cir. Apr. 9, 2025) (quoting *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022)), and will not reverse "unless we are left with the 'definite and firm conviction' that a mistake was made," *United States v. Karasarides*, 159 F.4th 972, 992 (6th Cir. 2025) (quoting *United States v. White*, 492 F.3d 380, 414 (6th Cir. 2007)). To prevail, Davis must persuade us "that the court's evaluation of the loss was not only inexact but outside the universe of acceptable computations." *United States v. Mahbub*, 818 F.3d 213, 231 (6th Cir. 2016) (quoting *United States*

*v. Raithatha*, 385 F.3d 1013, 1024 (6th Cir. 2004), *vacated and remanded on other grounds*, 543 U.S. 1136 (2005) (mem.)).

Davis does not dispute that the cash boxes from the ATM contained $45,346. Davis purposefully sought to break open the ATM and steal its contents. He offers no evidence that he intended to steal only a subset of the cash in the ATM. In fact he offers no alternative amount for intended loss beyond the damage to the machine. The district court did not clearly err by including the $45,346 from the ATM in its amount of loss calculation, as that amount was plausible and within the "universe of acceptable computations." *Id.* (quoting *Raithatha*, 385 F.3d at 1024).

### Impermissible Factors

Davis argues that in varying from the guidelines range, the district court impermissibly relied on Davis' criminal history, which the guidelines range already incorporated. *See United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) ("Double-counting claims concern the procedural reasonableness of the defendant's sentence." (citing *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010))). Specifically, he states that the district court improperly relied on his prior three-year term of imprisonment, which he served concurrently for both his aggravated assault and attempted theft convictions and for which he received six cumulative criminal history points.

Typically, a defendant's criminal history is "not a proper reason for a variance precisely because the Guidelines already take it into account." *United States v. Boucher*, 937 F.3d 702, 711 (6th Cir. 2019) (citing *United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019)). In some circumstances, however, a district court may consider a defendant's criminal history to justify a variance, even if the guidelines range incorporates the same conduct. This Court has referred to the incorporation of "precisely the same aspect of the defendant's conduct [] into his sentence in

two separate ways" as "[d]ouble-counting . . . ." *United States v. Morgan*, 687 F.3d 688, 695 (6th Cir. 2012) (quoting *Battaglia*, 624 F.3d at 351). Double-counting differs from a district court's punishing of "distinct aspects of [a defendant's] conduct." *Id.* We have been more likely to uphold a variance based on criminal history where a "relationship" exists "between the instant offense and the defendant's prior offenses." *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020). Specifically, we have recognized that a sentencing court analyzing the 18 U.S.C. § 3553(a) factors may consider criminal history already incorporated into the guidelines range when the present and prior convictions share "similarities" that "demonstrate[] a need for deterrence beyond that already captured by the [G]uidelines." *United States v. Axline*, 93 F.4th 1002, 1011 (6th Cir. 2024) (alterations in original) (quoting *id.* at 678). Temporal proximity between similar offenses may also raise concern about the sufficiency of a guidelines sentence. *See id.* at 1011–12.

Although Davis' criminal history score accounted for his prior convictions, it did not account for all of the aggravating aspects that caught the district court's attention. The district court emphasized the violent nature of Davis' prior assault offenses, the similarities and temporal proximity between Davis' instant and most recent prior conviction, and Davis' past difficulties complying with the terms of probation. The guidelines assign three criminal history points "for each prior sentence of imprisonment exceeding one year and one month" that "was imposed within fifteen years of the defendant's commencement of the instant offense" or "that resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. §§ 4A1.1(a), 2(e)(1). Therefore, a defendant could earn the same criminal history score as Davis based on any qualifying felonies, violent or otherwise, regardless of whether they bore any resemblance to the defendant's present offense, whether they occurred one year or 15 years ago, and irrespective of whether the defendant has demonstrated noncompliance on probation. Davis does not offer

countervailing evidence that a typical defendant sentenced under the same guideline would share those characteristics. Therefore, by focusing on those aspects for the variance, the district court did not double-count but rather considered otherwise unincorporated and pertinent aspects of Davis' criminal history.[1] That was not a procedural error.

**Age Mitigation**

According to Davis, his above-guidelines sentence did not account for his young age at the time of this offense and the prior ones. A sentencing court must make a record that it has "considered the defendant's [nonfrivolous] argument" for a lower sentence "and explained the basis for rejecting it." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)). Failure to explicitly mention a point may not indicate that the district court did not consider it at all, but the "reasons for rejecting the arguments" must "be apparent from the sentencing transcript as a whole." *United States v. Haile*, 157 F.4th 820, 831–32 (6th Cir. 2025) (quoting *United States v. Brinda*, 851 F. App'x 565, 568 (6th Cir. 2021)).

To at least some extent, the argument that Davis' age should mitigate his sentence was before the district court. Davis' PSR flagged age as a potential ground for departure from the guidelines. Davis' sentencing memorandum reiterated that the district court should "recognize . . . the age when [Davis' prior convictions] took place." Sentencing Mem., R. 23, PageID #134. And at the sentencing hearing, Davis' attorney noted that Davis is "a young man . . . ." Sentencing Tr., R. 33, PageID #192.

---

[1] Davis seems to suggest that his prior three-year term of imprisonment already received undue weight from the six criminal history points assigned in the PSR, but Davis received six points for that sentence rather than three because he served it for two separate offenses concurrently.

A clearer explanation as to why the district court was unmoved by Davis' age would have been helpful to our review, but the district court said enough to show that it was aware of and considered the fact. Davis' most salient argument on this point at sentencing was that his prior offenses occurred in his youth. In reviewing Davis' criminal history, the district court acknowledged that several of Davis' juvenile offenses occurred "at the younger ages of 14 and 15 . . . ." *Id.* at PageID #198. The district court apparently registered Davis' age at the time he committed those offenses and decided that other factors outweighed it.

The district court did not credit Davis' youth during the conduct that extended into Davis' 20s, including the instant offense, but Davis did not articulate that point in earnest at sentencing, so we may review it only for plain error. Under that standard, Davis "must show: '(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Taylor*, 800 F.3d 701, 714 (6th Cir. 2015) (quoting *Wallace*, 597 F.3d at 802). We are not persuaded that the district court made an obvious or clear error by not explaining *sua sponte* why Davis' age of 26 did not warrant a shorter sentence.

**Clearly Erroneous Facts**

Finally, Davis argues that the district court erroneously concluded that he was "a danger to the community" because the nature of his offense, larceny, "did not involve a danger of bodily harm and was not an offense of violence." Def.'s Br. 25 (quoting Sentencing Tr., R. 33, PageID #200). When reviewing a sentence for procedural reasonableness, we review the sentencing court's factual findings for clear error. *United States v. Vowels*, 159 F.4th 1095, 1100 (6th Cir. 2025) (citing *Rayyan*, 885 F.3d at 440). Davis does not cite any support for the proposition that only violent crimes pose a danger to the community. In fact, the district court acknowledged that

Davis "didn't go into a bank with a gun" but found the attempt to steal an ATM to be a "serious offense," made more dangerous by the involvement of law enforcement. Sentencing Tr., R. 33, PageID #200. Furthermore, Davis did not object to the fact set forth in the PSR that the trucks used in the commission of this offense and the similar prior offense had been stolen. A court could reasonably view repeated thefts of others' vehicles as posing a danger to the community. That is especially true given the violent offenses in Davis' criminal history that the district court discussed. The district court did not clearly err by finding that Davis was a danger to the community.

## C. Substantive Reasonableness

Because we do not find a procedural error in Davis' sentencing, we next "consider the substantive reasonableness of the sentence ... tak[ing] into account the totality of the circumstances . . . ." *Gall*, 552 U.S. at 51. A defendant's challenge to the substantive reasonableness of a sentence is essentially an argument that the sentence is "'greater than necessary[] to comply with the purposes' of § 3553(a)." *Axline*, 93 F.4th at 1008 (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). A sentence may be substantively unreasonable if it is arbitrary, if it is based on impermissible factors, or if it weighs a pertinent factor too heavily or too lightly. *United States v. Adkins*, 729 F.3d 559, 563–64 (6th Cir. 2013) (quoting *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011)), *superseded on other grounds by statute*, WEAPONS, 2018 Ohio Laws 159, *as recognized in Wilson*, 75 F.4th 633.

The district court's assessment of how "to balance the applicable sentencing factors is beyond the scope of [this] Court's review." *Id.* at 571 (first citing *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008); and then citing *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)). District courts have "greater familiarity" with the facts of the cases before them than the courts of appeals, and they are in a "superior position to find facts and judge their import under

§ 3553(a) . . . ." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (first quoting *Rita v. United States*, 551 U.S. 338, 357 (2007); and then quoting *Gall*, 552 U.S. at 51). Thus we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. We may not vacate the sentence merely because we would prefer a different one. *Id.* A district court may exercise its discretion to weigh a factor more heavily than others if warranted based on the facts of the case. *Adkins*, 729 F.3d at 571 (citing *United States v. Zobel*, 696 F.3d 558, 571–72 (6th Cir. 2012)). A defendant's burden in showing that the balance was unreasonable increases where the district court has "explicitly or implicitly consider[ed] and weigh[ed] all pertinent factors . . . ." *Id.* (quoting *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011)).

In assessing the substantive reasonableness of a sentence, we consider "the extent of any variance from the Guidelines range." *Id.* (quoting *Gall*, 552 U.S. at 51). When a sentence falls outside of the guidelines range, it is not presumptively unreasonable, but the sentencing court "must [have] consider[ed] the extent of the deviation and ensure[d] that the justification is sufficiently compelling to support the degree of the variance." *United States v. Aleo*, 681 F.3d 290, 299 (6th Cir. 2012) (quoting *Gall*, 552 U.S. at 50); *see United States v. Harrison*, No. 23-3276, 2024 U.S. App. LEXIS 14835, at *18–19 (6th Cir. June 18, 2024) (order). A larger variance from the guidelines requires a more compelling justification grounded in the 18 U.S.C. § 3553(a) factors. *Aleo*, 681 F.3d at 299 (quoting *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007)). For cases that "fall outside the Guidelines' 'heartland,' the district court's decision to deviate from the advisory range is entitled to the 'greatest respect[]' . . . ." *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (quoting *Kimbrough*, 552 U.S. at 89). But in such a case the district court must explain "why the defendant's unique circumstances fall outside

the 'heartland' of cases affected by the relevant guideline." *Axline*, 93 F.4th at 1008 (quoting *Boucher*, 937 F.3d at 708). A deviation "from the advisory range in a 'mine-run case' warrants 'closer review.'" *Herrera-Zuniga*, 571 F.3d at 582 (quoting *Kimbrough*, 552 U.S. at 109).

The district court varied upwards from the top of Davis' guidelines range significantly. Davis' guidelines range was 21 to 27 months, and the district court imposed a term of 48 months, which is a variance of 21 months and approximately 78%. A variance of that magnitude is atypical in this circuit for defendants sentenced for the kinds of offenses covered by U.S.S.G. § 2B1.1, *see, e.g.*, *United States v. Noble*, No. 24-5186, 2025 WL 1862460, *1, *2–4 (6th Cir. July 7, 2025) (affirming seven-month (21%) variance for counterfeiting Federal Reserve notes based on criminal history, substance dependency, likelihood of recidivism, the need to protect the public, and the need to provide defendant medical care); *Harrison*, 2024 U.S. App. LEXIS 14835, at *1, *4–5 (affirming 72-month (43%) variance for "pernicious scheme to defraud at least a dozen people, many of whom were in vulnerable positions or unsophisticated in investing"); *United States v. Smith*, No. 22-5559, 2023 WL 4703864, *1 (6th Cir. July 24, 2023) (affirming five-month (14%) variance for telemedicine scam), but not unprecedented where the facts and circumstances justify it, *see, e.g.*, *United States v. Fievet*, 808 F. App'x 358, 359, 361–62 (6th Cir. 2020) (affirming 12-month (75%) variance for conspiracy to defraud the United States, theft of government property, social security fraud, and tampering with a witness, where government paid defendants $47,566.20 in social security benefits, based on defendant's obstruction and "lamentable history . . . of disreputable, deceitful" acts); *United States v. Johnson*, 591 F. App'x 324, 324–26 (6th Cir. 2014) (per curiam) (affirming 24-month (80%) variance for use of unauthorized access devices where after pleading guilty defendant stole cigarettes from behind cashiers at Walgreens stores at least four times).

The district court had to establish a particularly compelling justification for that relatively large variance. Davis states that the district court placed too much weight on his prior conviction for assault of a public servant, which he committed when he was 17 years old, entailed his throwing rocks at a correctional officer, and earned Davis three criminal history points. (Davis elides the fact stated in the PSR, to which he did not object, that he additionally had hit the Correctional Officer in the face, causing injury.) He believes that the district court should have focused less on Davis' criminal history, deterrence, and protecting the public and more on the need to avoid disparities. He also submits that the district court should have weighed more heavily Davis' age, acceptance of responsibility, and mental health struggles and the non-violent nature of the offense. But the district court did not consider only the factors that Davis claims were unduly weighed and in fact addressed the points that Davis argues should have received more attention. Therefore, Davis' burden is high.

The apparent rationale behind the district court's balancing of the § 3553(a) factors is the same rationale discussed *supra* regarding the procedural propriety of considering conduct that the guidelines already capture. Exceptional facts about the offense and Davis' criminal history made deterrence and protecting the public greater concerns for the district court and made parity with other defendants less of a concern. Based on the violence in Davis' past, the recent nature and similarity of Davis' prior attempted ATM theft, Davis' recidivism following a three-year term of imprisonment for that offense, and Davis' history of violating probation, the district court's conclusion that Davis' case is outside the heartland was not unreasonable, so we give heightened deference to the district court's decision to vary. *See United States v. Penny*, No. 24-3110, 2025 WL 502701, at *5–6 (6th Cir. Feb. 14, 2025); *Axline*, 93 F.4th at 1010; *United States v. Solano-Rosales*, 781 F.3d 345, 356–57 (6th Cir. 2015).

A major objective of the statutory sentencing framework is "to eliminate 'unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct.'" *Poynter*, 495 F.3d at 352 (alteration in original) (quoting 18 U.S.C. § 3553(a)(6)). Sentencing data are "'a starting point . . .' to avoid unwarranted sentence disparities[,]" *United States v. Perez-Rodriguez*, 960 F.3d 748, 756–57 (6th Cir. 2020) (quoting *United States v. Stock*, 685 F.3d 621, 629 n.6 (6th Cir. 2012)), but they are just a factor, and a district court does not necessarily abuse its discretion by varying from those norms, *Axline*, 93 F.4th at 1013. Although Davis' imprisonment will significantly exceed the average and median for other defendants sentenced under the same guideline, the district court explained why those figures were not controlling in this case. Therefore, we conclude that the district court did not abuse its discretion in its weighing of the § 3553(a) factors.

### III. CONCLUSION

Davis' sentence is not procedurally or substantively unreasonable. Therefore, we **AFFIRM** the district court's judgment.